COPY

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

09CV013592

GUARANTY BANK
4000 West Brown Deer Road
Milwaukee, WI 53209,

                                                Case No.

        Plaintiff,

                                                Case Codes: 30303-Other Contracts
                                                            30701-Declaratory Judgment

v.

OLD REPUBLIC INSURANCE COMPANY
c/o Alan P. Pavlic, Registered Agent
445 South Moorland Road, Suite 301          HON. JOHN J. DIMOTTO, BR. 41
Brookfield, WI 53005,
                                            CIVIL C

        Defendant.

---

                        **SUMMONS**

FILED AND
AUTHENTICATED

SEP 01 2009

JOHN BARRETT
Clerk of Circuit Court

---

THE STATE OF WISCONSIN

To each person named above as a defendant:

        You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal

action against you.  The Complaint, which is attached, states the nature and basis of the legal

action.

        Within forty-five (45) days of receiving this Summons, you must respond with a written

answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint.  The

court may reject or disregard an answer that does not follow the requirements of the statutes.

The answer must be sent or delivered to the court, whose address is Milwaukee County

Courthouse, 901 North Ninth Street, Milwaukee, Wisconsin 53233-1425, and to Plaintiff's

attorney, Matthew S. Vignali, whose address is Beck, Chaet, Bamberger & Polsky, S.C., Two

Plaza East, Suite 1085, 330 East Kilbourn Avenue, Milwaukee, Wisconsin 53202.  You may

have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 31st day of August, 2009.

BECK, CHAET, BAMBERGER & POLSKY, S.C.
Attorneys for Plaintiff

By: _____
Matthew S. Vighali
State Bar No. 1023288
Kevin L. Keeler
State Bar No. 1009196

P. O. Address:

BECK, CHAET, BAMBERGER & POLSKY, S.C.
Two Plaza East, Suite 1085
330 East Kilbourn Avenue
Milwaukee, WI 53202
Phone: (414) 273-4200
Fax: (414) 273-7786

2

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

09CV013592

GUARANTY BANK
4000 West Brown Deer Road
Milwaukee, WI 53209,

      Plaintiff,                 Case No.

v.                        Case Codes: 30303-Other Contracts
                                    30701-Declaratory Judgment

OLD REPUBLIC INSURANCE COMPANY
c/o Alan P. Pavlic, Registered Agent
445 South Moorland Road, Suite 301
Brookfield, WI 53005,

      Defendant.

FILED AND
AUTHENTICATED

SEP 0 1 2009

JOHN BARRETT
Clerk of Circuit Court

**COMPLAINT**

    The above named plaintiff, Guaranty Bank, by its attorneys, Beck, Chaet, Bamberger &

Polsky, S.C., for its claims against the above named defendant, Old Republic Insurance

Company, alleges and shows to the Court as follows:

    1.    The plaintiff, Guaranty Bank (hereinafter "Guaranty"), is a federal savings bank

chartered under the laws of the United States with its home office at 4000 West Brown Deer

Road, Milwaukee, Wisconsin 53209. At all times relevant hereto, Guaranty was engaged in

substantial and not isolated activities within Wisconsin, including Milwaukee County.

    2.    The defendant, Old Republic Insurance Company (hereinafter "ORIC") is a

foreign insurance company authorized to do business in the State of Wisconsin with an address

of P.O. Box 789, Greensburg, Pennsylvania 15601. At all times relevant hereto, ORIC was

engaged in substantial and not isolated activities within Wisconsin, including Milwaukee

County.  The registered agent for service of process for ORIC is Alan P. Pavlic, Old Republic Surety Company, 445 South Moorland Road, Suite 301, Brookfield, Wisconsin 53005.

3.     ORIC issued two polices of mortgage guaranty insurance to Guaranty in Wisconsin.  One such policy is Policy No. Z 16 and is titled "Revolving Loan Credit Insurance Policy" (hereinafter, "Policy Z 16").  A true and correct copy of Policy Z 16 is attached hereto as Exhibit A and incorporated herein.  The other such policy is Policy No. T 62 and is titled "Credit Insurance Policy" (hereinafter, "Policy T 62").  A true and correct copy of Policy T 62 is attached hereto as Exhibit B and incorporated herein.  (Policy Z 16 and Policy T 62 are sometimes collectively referred to herein as the "Policies".)

4.     Each of the Policies insures Guaranty against certain losses arising out of the failure of borrowers to make any payment due to Guaranty at the time and in the manner and amount specified in the loans covered by the Policies ("Covered Loans").

5.     Guaranty has complied with the conditions of both of the Policies or such conditions have been satisfied or waived or are subject to an estoppel.

6.     Guaranty has submitted certain claims covered by the Policies to ORIC for payment and filed proofs of loss with ORIC for those claims (hereinafter referred to as the "Claims").

7.     ORIC has denied the Claims on various asserted grounds, including, but not limited to, the following:

   a.     The alleged failure of Guaranty to pay a monthly premium for a particular Covered Loan while the mortgaged property was being transferred to real estate owned ("REO") status, even though Guaranty made up the payment immediately the following

2

month and under the past course of dealing between the parties ORIC had customarily accepted such payment;

      b.      The alleged lack of a document in the particular Covered Loan file, even though Guaranty was under no obligation to ORIC to obtain such document as a condition of coverage;

      c.      The alleged failure of Guaranty to file a proof of loss within 6 months after default as required under the Policy, even though ORIC encouraged Guaranty to delay filing a proof of loss while Guaranty attempted to achieve a loan work out with the borrower. This was done with the full knowledge and approval of ORIC, because if successful, the workout would have mitigated Guaranty's loss on such Covered Loan thereby benefiting ORIC by reducing Guaranty's claim;

      d.      The alleged misrepresentation or fraud of the borrower in misstating income or some other item in the credit application, even though the Policies do not provide ORIC with any right to rescind coverage or deny a Claim on that basis;

      e.      The alleged discrepancy between income as stated by a borrower and alleged actual income, even though such Covered Loans were "stated income" loans under the Sanctioned Guidelines that ORIC agreed to which did not require Guaranty to obtain evidence of income, and the alleged discrepancy was based upon information not available at the time of loan origination, such as tax returns filed months after origination.

      8.      ORIC's denials of the Claims are in violation of the Policies' terms and conditions, or ORIC has waived or is estopped from asserting any applicable terms and conditions that might otherwise permit ORIC to deny coverage.

9. ORIC is not entitled to rescind or cancel coverage on any of the loans for which Claims have been submitted because such rescission or cancellation is in violation of Wisconsin law, including but not limited to WIS. STATS §§ 631.11 and 631.36(2).

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

10. Guaranty incorporates by reference each paragraph set forth above as if fully set forth herein.

11. ORIC has breached and continues to breach the terms of the Policies by wrongfully denying the Claims.

12. As a result of ORIC's breach of the Policies, ORIC has deprived Guaranty of the full benefits of the Policies.

13. As a result of ORIC's breach of the Policies, Guaranty has sustained and will sustain substantial damages, including but not limited to the amount of loss payable under the Policies for each Claim, which Claims presently exceed $3,550,000.

## SECOND CAUSE OF ACTION – INTEREST AND DAMAGES PURSUANT TO §628.46 WIS. STATS.

14. Guaranty incorporates by reference each paragraph set forth above as if fully set forth herein.

15. Each of the Claims not paid by ORIC were submitted by Guaranty to ORIC by written notice of the fact of a covered loss under the Policies and the amount of the loss.

16. Each separate Claim not paid by ORIC satisfied the provisions of Wis. Stat. § 628.46.

17. Each separate Claim not paid by ORIC is overdue pursuant to Wis. Stat. § 628.46.

18. As a result, Guaranty is entitled to recover, in addition to its damages, 12 percent interest from ORIC for each denied Claim, together with all the other remedies authorized by Wis. Stat. § 628.46.

## THIRD CAUSE OF ACTION - DECLARATORY JUDGMENT

19. Guaranty incorporates by reference each paragraph set forth above as if fully set forth herein.

20. Guaranty has submitted and continues to submit valid claims to ORIC under the Policies which ORIC has denied and continues to deny.

21. ORIC was and is required, pursuant to the terms of the Policies and applicable law, to pay each such claim it has denied.

22. An actual and justiciable controversy currently exists between Guaranty and ORIC with respect to the duties and obligations of ORIC under the Policies to pay the claims that Guaranty has submitted which ORIC has denied and claims that Guaranty will submit in the future.

23. Pursuant to Wis. Stat. § 806.04, Guaranty seek a declaration of ORIC's obligations under the Policies to pay properly submitted claims in accordance with the terms and conditions of the Policies and applicable law.

WHEREFORE, plaintiff, Guaranty Bank, demands judgment against defendant, Old Republic Insurance Company, as follows:

A. For all money damages that Guaranty has suffered as a result of ORIC's breach of contract and failure to pay the Claims under the Policies, in an amount to be determined at trial, but not less than $ 3,550,000;

5

B.     For interest at the rate of 12% on all amounts due from ORIC on the Claims pursuant to Wis. Stat. § 628.46;

C.     For a declaration as to ORIC's obligations to Guaranty under the Policies to cover and pay the Claims and all future claims for which coverage is provided pursuant to the Policies;

D.     For such other relief the Court deems appropriate, together with costs, disbursements and attorneys' fees incurred by Guaranty in this action.

Dated this ___31 st___ day of August, 2009.

BECK, CHAET, BAMBERGER & POLSKY, S.C.
Attorneys for Plaintiff

By: _____
Matthew S. Vignali
State Bar No. 1023288
Kevin L. Keeler
State Bar No. 1009196

P. O. Address:

BECK, CHAET, BAMBERGER & POLSKY, S.C.
Two Plaza East, Suite 1085
330 East Kilbourn Avenue
Milwaukee, WI 53202
Phone: (414) 273-4200
Fax: (414) 273-7786

No....7..16...............................

Renewal of
Policy No............................

CONFIDENTIAL

# REVOLVING LOAN
# CREDIT INSURANCE POLICY



### OLD REPUBLIC
#### Insurance Company

*GREENSBURG, PENNSYLVANIA*
*A STOCK COMPANY*
(hereinafter called the Company)

In consideration of the stipulations and provisions hereinafter set forth and of the premium hereinafter specified, does insure

..............................GUARANTY..HOME..EQUITY..CORPORATION..................................................
a corporation organized under the laws of........WISCONSIN........................., hereinafter called the Assured, whose address is ........................................Milwaukee,..Wisconsin......................................................, against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by an Eligible Line of Credit Agreement, reported to the Company and insured hereunder.

This Policy shall be effective from the......1........day of....September......, 20....01..., at 12:01 A.M. at the place of business of the Assured and shall remain in force continuously until cancelled. The coverage afforded by this Policy shall attach to a particular Loan coincident with an actual disbursement by the Assured during this Policy term pursuant to an Eligible Line of Credit Agreement.

The Assured shall pay the Company a monthly premium of......80..........% of the Average Daily Balance (as hereinafter defined) of any Loan reported for insurance, which premium shall be payable within fifteen (15) days after the close of each month during which this policy is in effect.

All Loans made by the Assured pursuant to a Line of Credit Agreement shall be reported to the Company for insurance within fifteen (15) days after the close of the month in which such Loans are made or purchased. The reporting form shall be as prescribed by the Company.

The Company's liability for loss with respect to any Insured Loan or Loans to any particular individual Borrower who defaults to the Assured hereunder shall be limited to ten thousand dollars ($10,000.00) unless a higher limit is specifically approved by the Company and is endorsed hereon. The Company's maximum cumulative liability for Loss under this Policy is further limited to ten percent (10%) of the sum of the highest outstanding balances of Loans insured hereunder made by the Assured during the twelve (12) month period immediately following the effective date of this Policy and during each succeeding twelve (12) month period in which this Policy is in effect. The Company's maximum liability under this Policy shall in no event exceed $...88,000,000.................. during each such twelve (12) month period.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated which are hereby made part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

IN WITNESS WHEREOF, the Company has duly executed these presents; but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Countersigned this ...........12th..................

day of....SEPTEMBER........, 20 01.......

**OLD REPUBLIC INSURANCE COMPANY**

By ....................................................
Authorized Representative

.................................................... *President*

.................................................... *Secretary*

ICS-R1                                                                    (11/99)

EXHIBIT A

# PROVISIONS AND STIPULATIONS

## 1. DEFINITIONS

a. "Loan" means an advance of funds, or the purchase of an obligation to receive repayment of such advances made pursuant to an Eligible Line of Credit Agreement and evidenced in writing

b. "Eligible Line of Credit Agreement" or "Line of Credit" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

(1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower;

(2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof;

(3) Contains payment requirements meeting the following specifications: The Line of Credit shall be payable in approximately equal monthly installments based on the outstanding balance at the time of the Borrower's most recent draw under his Line of Credit. The first payment shall fall due within 45 days after that most recent draw by the Borrower. The payments shall be no less than 1/60th of the outstanding balance at the time of that draw, but in no event may the monthly payments be less than forty dollars ($40.00);

(4) Is for an amount such that the net proceeds, as defined below, of such evidence of the indebtedness plus the then unpaid net proceeds of any other loans insured by the Company made by the Assured to the individual Borrower exercising the line of credit are not in excess of $10,000.00. Specified notes for greater amounts may, nevertheless, be insured hereunder upon endorsement of this policy specifically insuring such notes; and

(5) Allows the Assured to decline to make further loans pursuant to such line of credit.

c. "Borrower" means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Line of Credit Agreement and written evidences of advances thereunder.

d. "Payment" or "Installment" means a deposit by the Borrower with the Assured of funds which represent the full or partial repayment of a Loan according to the terms of the Line of Credit Agreement evidencing such Loan.

e. "Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Line of Credit Agreement evidencing the Loan.

f. "Date of Default" means the earliest date upon which an installment or payment was due which was not paid by the Borrower according to the terms of the Note.

g. "Loss" means the amount payable to the Assured by the Company as provided in paragraph 5 hereof.

h. "Net Proceeds" means the amount of the advance of funds actually made or the purchase price of an obligation giving the holder the right to receive repayment of such advances, exclusive of finance charges, fees, and other deductions.

i. "Average Daily Balance" of a Loan which changed in amount during the month shall be calculated by multiplying each amount of the Loan by the number of days that amount was outstanding, adding the products of such multiplications and dividing the total by the number of days in the month.

## 2. CONDITIONS PRECEDENT TO RECOVERY

Prior to making a Loan, the Assured shall obtain a dated credit application fully completed and executed by the Borrower. The credit application supplemented by such other information as the Assured deems necessary, must, in the judgment of the Assured, clearly show the Borrower to be solvent, with reasonable ability to repay the Loan, and in all other respects a reasonable credit risk. If, after the Loan is made, the Assured discovers any material misstatements in the credit application, or misuse of the proceeds of the Loan by the Borrower, the Assured shall promptly report such discovery to the Company.

The Assured shall exercise due diligence in disbursing proceeds of Loans and in effecting collections and shall service its Loans in accordance with acceptable practices of prudent lending institutions.

Claim may be made after Default provided written demand has been made on the Borrower for the full unpaid balance of the then outstanding balance of the Line of Credit. The Company reserves the right to require the Assured to reduce the obligation to judgment.

## 3. NOTICE OF DEFAULT AND FILING OF CLAIMS FOR LOSS

Should a Default continue for a period of ninety (90) days, notice thereof must be filed with the Company monthly thereafter on the form prescribed by the Company until the Default is cured or a Claim for Loss is filed. A Claim for Loss may be filed as to an individual Loan at any time after Default but in no event later than six (6) months after Default unless the Company shall grant an extension of the claim period in writing. Claims shall be filed on Proof of Loss forms provided by the Company, which shall include an assignment of the Assured's interest in the defaulted Note to the Company or such other person as may be designated by the Company as assignee.

## 4. PAYMENT OF LOSS

All adjusted claims shall be paid or made good within thirty (30) days after presentation of satisfactory evidence of Loss to the Company.

## 5. LIMIT OF LOSS

In addition to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Line of Credit or the maximum amount authorized by the Line of Credit Agreement, whichever is lesser, less the unearned discount thereon, plus:

a. uncollected earned interest to date of Default and interest at the rate of    4 % per annum from the

date of Default to the date of payment of Loss; plus

b. uncollected court costs (including fees paid for issuing, serving and filing summons); plus

c. attorneys' fees actually paid, not exceeding:

   (1) 25 percent of the amount collected by the attorney on the defaulted Line of Credit provided the Assured does not waive its claim against the Borrower for such fees; plus

   (2) $100.00 where judgment is obtained;

less any part of the foregoing amounts which the Assured has collected from others, or which the Assured can collect from a reserve or holdback funds in its hands.

## 6. SUBROGATION

In the event of any payment under this Policy, the Company shall be subrogated to all of the Assured's rights of recovery against the Borrower and any other person or organization liable under the terms of the defaulted Line of Credit, and against any reserve or holdback funds in its hands, and the Assured shall execute and deliver at the request of the Company instruments and papers and do whatever else is necessary to transfer, assign and secure such rights. The Assured shall do nothing after Loss to prejudice such rights, and the execution by the Assured of a release or waiver of the right to collect the unpaid balance of a Line of Credit shall equally release the Company from any further obligation under this Policy as to said Line of Credit, anything in this Policy to the contrary notwithstanding.

## 7. TRANSFER OR PREPAYMENT OF LOANS REPORTED FOR INSURANCE

All liability under this Policy with respect to any individual Loan shall terminate upon sale or transfer (including without limiting the generality of application of this section, transfers pursuant to, or resulting from merger or consolidation of the Assured with any other corporation or company) of such Loan, or the Line of Credit Agreement evidencing same, to any transferee not holding a similar Policy issued by the Company.

Such sales or transfers may be made to a transferee holding a similar Policy issued by the Company only with the prior written approval of the Company. In the event of such a sale or transfer, the continuing liability of the Company to the transferee with regard to the Loan or Loans sold or transferred shall be ten percent of the aggregate unpaid balance of the net proceeds of such Loan or Loans at the time of transfer or sale, and the aggregate limit of liability of the Company to the Assured hereunder shall be reduced by an equal amount.

In no event shall the Company refund any premium to the Assured upon the sale or transfer of any Loan or Loans insured hereunder.

Nothing contained herein shall be construed to prevent the pledging of such loans, or the Line of Credit Agreements evidencing the same, as collateral security under a bona fide loan agreement.

## 8. REPORTS AND EXAMINATION

The Company may at any time call upon the Assured for such reports as it may deem necessary and may inspect the books or the accounts of the Assured as they pertain to the Lines of Credit reported for insurance hereunder. All Lines of Credit reported to the Company for insurance hereunder shall be identified by methods satisfactory to the Company on the records of the Assured.

## 9. AMENDMENTS

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy. The terms of this Policy may be waived or changed only after written approval of the Company and by an endorsement signed on behalf of the Company by its President, Vice President or Secretary and countersigned by a duly authorized representative of the Company.

## 10. MISREPRESENTATION AND FRAUD

The Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a Loss, or if the Assured shall make any claim which is false or fraudulent either in amount or otherwise.

## 11. OTHER INSURANCE

If at the time of Loss or Default there is any other valid and collectible insurance which would attach if this insurance had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

## 12. ASSIGNMENT OF POLICY

This Policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

## 13. SUIT AGAINST COMPANY

No suit, action or proceeding for the recovery of any claim under this Policy shall be instituted or sustainable in any court of law or equity unless Proof of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within twelve (12) months next after Default; provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

## 14. CANCELLATION

This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than five (5) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be

sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

If the Company cancels this Policy, Loans made prior to the effective date of cancellation shall remain insured hereunder upon payment of the monthly premium on such Loans until such Loans are repaid in full or are increased by a new Loan. If the Assured cancels this Policy, the Assured shall continue to pay the monthly premium on all Loans made prior to the effective date of cancellation until such Loans are paid in full or are increased by a new Loan.

## 15. CONFORMITY TO STATUTE

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.



No. Z 16

Renewal of
Policy No.

**OLD REPUBLIC**
Insurance Company

GREENSBURG, PENNSYLVANIA

(A STOCK COMPANY)

ISSUED TO
GUARANTY HOME EQUITY CORPORATION
Milwaukee, Wisconsin
**CREDIT INSURANCE POLICY**

(11/99)

ICS-R1

# RETROACTIVE RATING ENDORSEMENT
## TO
## OUTSTANDING BALANCE
## CREDIT INSURANCE POLICY

It is agreed that the premium collected under this policy and all renewals of it to which this or a similar Retroactive Rating Endorsement is attached (the Policies) shall, until termination of this or such similar endorsement, be subject to a final rating adjustment three (3) months after the maturity or other disposition of all loans reported for insurance during the periods of coverage of such Policies and such endorsements. This adjustment shall be based on the cumulative loss experience developed with respect to such loans, as follows:

> If the cumulative losses incurred shall equal 55% to 60% inclusive of the cumulative earned premium, the rate shall be the base rate specified in the current policy.

> If the cumulative losses incurred are less than 55% of the cumulative earned premium, the rate shall be adjusted retroactively on the basis of the following formula:

>> The difference between the cumulative loss ratio (cumulative losses incurred divided by cumulative earned premium) and 55% shall be multiplied by 1.5 and the product shall in turn be multiplied by the cumulative earned premium. The product of this second multiplication shall be the amount of the current downward adjustment.

>> If the cumulative losses incurred shall exceed 60% of the cumulative earned premium, the excess percentage shall be multiplied by 1.5 and the product shall in turn be multiplied by the cumulative earned premium. The product of this second multiplication shall be the amount of the current upward adjustment.

Losses incurred shall be 1.075 of the sum of the actual paid losses, plus pending and anticipated losses, to allow for loss adjustment expense.

In no event shall any downward adjustment reduce the cumulative earned premium below the cumulative earned premium calculated at the minimum premium rate of $ .50 per $1,000 per month nor shall any upward adjustment increase the cumulative earned premium above the cumulative earned premium calculated at the maximum premium rate of $ 1.00 per $1,000 per month on the month-end outstanding balances insured under the Policies.

The first such calculation shall cover the two-year period beginning with the effective date of the first Retroactive Rating Endorsement attached to the Policies and shall be made within three months following the expiration of such two-year period. Subsequent interim computations of the retroactive rating premium shall be made annually thereafter based on the cumulative experience of the Policies until a final retroactive rating adjustment is determined three months after all loans insured under the Policies have been repaid in full or otherwise disposed of. In determining the amount of any downward adjustment to be paid to the insured, the amount of any prior downward adjustments returned to the insured shall be deducted from the downward adjustment determined by the formula above.

One-half of any current downward adjustment determined hereunder shall be returned to the Assured at the time the computation is submitted to the Assured. The remainder shall be retained by the Company in a premium stabilization reserve retained by the Company with respect to the Policies; provided, however, that if the amount in such premium stabilization reserve shall exceed 100% of the estimated premium for the next succeeding twelve-month period, the Company shall return such excess to the Assured. Up to 50% of the amount in the premium stabilization reserve in any year may be used to pay any upward adjustment required by the retrospective premium calculation for that year. After the final adjustment, any amount remaining in such premium stabilization reserve shall be returned to the Assured, but no returns shall be made after the termination of the last Policies or of the Retroactive Rating Endorsement attached to the last of the Policies until the final adjustment is made.

The Assured shall pay to the Company the amount of each current upward adjustment within ten days after receiving the computation showing that it is due.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the policy or any endorsement attached thereto, except as herein set forth.

This endorsement shall become effective September 1, 2001, but shall not be valid until countersigned by a duly authorized representative of the Company.

Attached to and forming a part of Policy No. Z 16, of the Old Republic Insurance Company issued to GUARANTY HOME EQUITY CORPORATION

ATTEST: _____ President          _____ Secretary

Countersigned: Chicago, Illinois    9/01    2001    ACCEPTED: _____

By: _____ (Authorized Representative)          _____ (Assured)

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. Z 16

issued to Guaranty Home Equity Corporation

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## First Adjustment Amendment
### To
## Retroactive Rating Endorsement
### To
## Credit Insurance Policy

Effective September 1, 2001, the first calculation period in the unnumbered paragraph of the Retroactive Rating Endorsement beginning with the phrase, "The first such calculation" is hereby amended to read as follows: follows:

> "The first such calculation shall cover the one-year period beginning with the effective date of the first Retroactive Rating Endorsement attached to the Policies and shall be made within three months following the expiration of such one-year period."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____          _____
President                        Secretary

Countersigned at Chicago, Illinois this 18th day of October, 2001.

_____          Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. Z 16

issued to GUARANTY HOME EQUITY CORPORATION . Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## WISCONSIN AMENDATORY ENDORSEMENT

It is understood and agreed that Section 9 of the Provisions and Stipulations of the Policy to which this endorsement is attached and made a part is hereby amended to include the following paragraph:

"Notwithstanding the other provisions of this Section 9, the Company is deemed to know any fact material to the risk or which breaches a condition of the Policy, if the agent who bound the Company or issued the Policy or transmitted the application to the Company knew it at the time the agent acted, or if thereafter any of the Company's agents with whom the Assured is then dealing as agent of the Company learns it in the course of the agent's dealing with the Assured, and knows that it pertains to a policy written by the Company."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____
President

_____
Secretary

Countersigned at Chicago, Illinois this __17th__ day of __September_____, 2001

tativ

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. Z 16

issued to    GUARANTY HOME EQUITY CORPORATION    Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that effective September 1, 2001 the Assured shall pay the Company a premium calculated at the rate of .080% on the unpaid balance outstanding at the beginning of every month of any loan reported for insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                                                  Secretary

Countersigned at Chicago, Illinois this _____30th_____ day of _November_ _____, 2001

_____     Authorized Representative

# ENDORSEMENT

This endorsement, effective October 1, 2001, forms a part of Policy No. Z 16

issued to Guaranty Home Equity Corporation

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective November 27, 2001, the Company's maximum cummulative liability for Loss under this Policy as stipulated in paragraph 5 of page 1 of such Policy is amended to be ten (10%) per cent of the aggregate Net Proceeds of Loans insured hereunder made by the Assured during the twelve (12) month period immediately following the effective date of this Policy and during each succeeding twelve (12) month in which this Policy is in full force and effect.

The Company's maximum liability under this Policy shall in no event exceed $ 88,000,000 during each such twelve (12) month period.

It is further understood and agreed that in the event such twelve (12) month period, liability has been exhausted, further insurance coverage is provided only on Loans reported for insurance by the Assured as having a loan-to-value ratio of over 89.99% at the time the Loan was made. A claim may then be filed if the Assured has obtained merchantable title on all collateral securing the Loan, has sold such collateral, and has established a deficiency between the full unpaid balance of the Note and the net proceeds for the sale of all collateral after satisfaction of the first lien against such collateral.

In addition, to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Note, after sale of all collateral securing the Note, or the amount remaining over the 89.99% loan-to-value ratio, whichever is the lesser.

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

_____
President

_____
Secretary

Countersigned at Chicago, Illinois this 27th day of November, 2001

_____ Authorized Representative

END R—607

ORICS-R—Rev. 11-01

# ENDORSEMENT

This endorsement, effective  September 1, 2001 , forms a part of Policy No. Z 16

issued to  GUARANTY HOME EQUITY CORPORATION  Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## LOAN LIMITATION
## CREDIT INSURANCE POLICY

The First sentence of the fifth paragraph of the policy is hereby amended to read as follows:

"The Company's liability for loss with respect to the Insured Loan of any one borrower shall be limited to Two Hundred Fifty Thousand Dollars ($250,000), provided such Insured Loan meets all of the qualifications set forth in the Company's 'Qualifying specifications for Guideline Underwriting' and Company Sanctioned Guidelines in effect on the date of such Insured Loan, unless a higher limit has been specifically approved by the Company and endorsed hereon."

## ELIGIBLE NOTE

The  sentence in Paragraph 1.b. (4) of the Provisions and Stipulations is hereby amended to read as follows:

"Is for an amount equal to the net proceeds of such note, as defined below, provided that the net proceeds of such note, plus the then unpaid net proceeds of any other loans (a) which have been made by the Assured to the same Borrower and which are insured by the Company do not exceed Two Hundred Fifty Thousand Dollars ($250,000), and that (b) such note meets all of the qualifications set forth in the Company's 'Qualifying Specifications for Guideline Underwriting' in effect on the date of the loan, except that notes for greater amounts may be insured hereunder by endorsement to this policy specifically identifying such notes."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreementer limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                                          Secretary

Countersigned at Chicago, Illinois this     18th 2 day of  October                                             , 2001

# ENDORSEMENT

This endorsement, effective October 1, 2001, forms a part of Policy No. Z 16

issued to     GUARANTY HOME EQUITY CORPORATION          Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that the effective date of the
Policy of which this endorsement forms a part is amended to be
October 1, 2001.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,
agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the
Company.

Attest: _____          _____
        President                          Secretary

Countersigned at Chicago, Illinois this _____ day of October_____, 2001

_____          Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. Z 16

issued to  GUARANTY HOME EQUITY CORPORATION    Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that Paragraph 5. a. is amended to read as follows:

> "uncollected earned interest to the date of presentation of Proof of Loss; plus"

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President

Secretary

Countersigned at Chicago, Illinois this __17th__ day of __September__ _____, 2001

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. Z 16

issued to GUARANTY HOME EQUITY CORPORATION        Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## SALVAGE AMENDMENT TO
## RETROACTIVE RATING ENDORSEMENT

It is hereby understood and agreed that in calculating losses incurred, the Company shall provide a credit of 50% of the amount of net recoveries, for purposes of computing interim adjustments in accordance with the Retroactive Rating Endorsement attached to and forming part of Policy No. Z 16.

It is further understood and agreed that no additional recovery credit will be made following the calculation of the final adjustment computed under the provisions of the Retroactive Rating Endorsement attached to and forming part of Policy No. Z 16.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____                    _____
President                                  Secretary

Countersigned: _____, 2001   ACCEPTED_____, 2001

By: _____                _____
(Authorized Representative)                (Assured)

                                           By: PRESIDENT
                                               TITLE



**OLD REPUBLIC**
Insured Credit Services, Inc.

## GB Home Equity -- ORICS Insured Home Equity Program Guidelines

POLICY YEAR POOL COVERAGE: 10%

POLICY DEFICIANCY COVERAGE: In excess of the policy pool coverage secondary protection is provided on all individual loans ≥ 90% to cover deficiency loss to the level of 89.9%

LOAN-TO-VALUE RATIO
INCLUDING NEW LOAN: 0% to 100%

LOWEST SCORE: As Stated on Lender Credit Policy Guidelines

DEBT RATIO: As Stated on Lender Credit Policy Guidelines

MINIMUM LOAN AMOUNT: Per Lender Guidelines

MAXIMUM LOAN AMOUNT: $200,000 (see Lender Credit Policy Guidelines for further limitations)

LOAN TYPE: As Stated on Lender Credit Policy Guidelines

PROPERTY TYPE: One to Four Family Dwellings Includes Condominiums and Year Round Vacation Homes (excludes mobile homes)

MAXIMUM TERM: Set by Lender, (Maximum 30 years)

VALUE DETERMINATION: Lenders preferred method (Loans over $100,000 must be documented by formal appraisal, using original purchase price, or tax assessment)

OWNERSHIP VERIFICATION: Yes

HOMEOWNER INSURANCE NAMING
LENDER AS LOSS PAYEE: Yes

OWNER OCCUPIED: Yes (Excludes - Second, New Construction, Seasonal Vacation, Mobil or Modular homes, Commercial or Vacant property)

TYPE: As Stated on Lender Credit Policy Guidelines

TIME AT EMPLOYMENT: 2 Years, same field

INCOME VERIFICATION: Per Lender Guidelines

PURPOSE: Second Deed of Trust -- Purchase or Refinance

CONSUMER DEBT: Per Lender Guidelines

MORTGAGE HISTORY: Per Lender Guidelines

BANKRUPTCY/FORCLOSURE: Per Lender Guidelines

ADDITIONALCREDIT CRITERIA
FOR INSURABILITY: Per Lender Credit Criteria

Acknowledged: _J.J. MUUNONILER_
Title: _PRESIDENT_
Date: _9/5/01_

Case 2:17-cv-00734-JPS   Filed 05/25/17   Page 22 of 51   Document 1-2

# ENDORSEMENT

This endorsement, effective  September 1, 2001,  forms a part of Policy No. Z 16

issued to    GUARANTY HOME EQUITY CORPORATION                Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that Paragraph 1.b.(3)is deleted
in its entirety and replaced by the following:

> "Contains payment requirements meeting the following
> specifications:  The line of credit shall have monthly
> payment requirements of no less than interest due with
> terms not exceeding 360 months."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,
agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the
Company.

Attest: _____          _____

President                                Secretary

Countersigned at Chicago, Illinois this ___17th___ day of September _____, 2002

_____ Authorized Representative

# ENDORSEMENT

This endorsement, effective     September 1, 2001,     forms a part of Policy No.   Z 16

issued to   GUARANTY HOME EQUITY CORPORATION       Milwaukee, Wisconsin

by **OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania**

Effective September 1, 2002 the Company's maximum cumulative liability for Loss under this Policy is further limited to ten percent (10%) of the sum of the highest outstanding balances of Loans insured hereunder made by the Assured during the twelve (12) month period immediately following the effective date of this Policy. The Company's maximum liability under this Policy shall in no event exceed $88,000,000.

It is further understood and agreed that in the event such twelve (12) month period, liability has been exhausted, further insurance coverage is provided only on Loans reported for insurance by the Assured as having a loan-to-value ratio of over 89.99% at the time the Loan was made. A claim may then be filed if the Assured has obtained merchantable title on all collateral securing the Loan, has sold such collateral, and has established a deficiency between the full unpaid balance of the Note and the net proceeds for the sale of all collateral after satisfaction of the first lien against such collateral.

In addition, to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Note, after sale of all collateral securing the Note, or the amount remaining over the 89.99% loan-to-value ratio, whichever is the lesser.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:                  President                                Secretary

Countersigned at Chicago, Illinois this    17th    day of   September            , 2002

                                                    Authorized Representative

# ENDORSEMENT

This endorsement, effective October 1, 2002 , forms a part of Policy No. Z 16

issued to Guaranty Bank FSB and its subsidiaries                    Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective October 1, 2002, the first paragraph of Section 14 in the section entitled "Cancellation" is deleted and replaced by the following:

"This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than six (6) months thereafter, such cancellation shall be effective, unless such cancellation is due to material breach of contract, change in risk or lack of prudent lending judgment, then such cancellation shall be effective not less than thirty (30) days thereafter."

Effective October 1, 2002, the second paragraph of Section 14 in the section entitled "Cancellation" is deleted and replaced by the following:

"If the Company cancels this Policy, Loans reported for insurance prior to the effective date of the cancellation shall remain insured hereunder upon payment of the monthly premium on such Loans until such Loans are repaid in full. If the Assured cancels this Policy, the Assured shall continue to pay the monthly premium on all Loans reported for insurance prior to the effective date of cancellation until such Loans are paid in full."

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

President                    Secretary

Countersigned at Chicago, Illinois this 15th    day of    October    2002

Authorized Representative

# ENDORSEMENT

This endorsement, effective October 1, 2002 , forms a part of Policy No. Z 16

issued to Guaranty Bank FSB and its subsidiaries                     Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective October 1, 2002, the first sentence in paragraph 1 of Section 2 in the section entitled "Conditions Precedent to Recovery" is hereby deleted in its entirety and replaced by the following:

"Prior to making a Loan, the Assured shall obtain a dated credit application or electronic application by the Borrower, Assured or agent for Borrower"

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

_____                    _____
President                                        Secretary

Countersigned at Chicago, Illinois this   15th   day of   October   2002

_____                    **Authorized Representative**

# ENDORSEMENT

This endorsement, effective October 1, 2002, forms a part of Policy No. Z 16

Issued to    GUARANTY HOME EQUITY CORPORATION                Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

The policy is hereby amended to change the name of the Assured from GUARANTY HOME EQUITY CORPORATION, Milwaukee, Wisconsin to GUARANTY BANK FSB AND ITS SUBSIDIARIES, Milwaukee, Wisconsin.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                                    Secretary

Countersigned at Chicago, Illinois this ___15th___ day of _October_ _____, 2002

_____ Authorized Representative

# ENDORSEMENT

This endorsement, effective April 1, 2005, forms a part of Policy No. Z 16

issued to GUARANTY HOME EQUITY CORPORATION      Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## LOAN LIMITATION
## CREDIT INSURANCE POLICY

The First sentence of the fifth paragraph of the policy is hereby amended to read as follows:

"The Company's liability for loss with respect to the Insured Loan of any one borrower shall be limited to Two Hundred Fifty Thousand Dollars ($250,000), provided such Insured Loan meets all of the qualifications set forth in the Company's 'Qualifying specifications for Guideline Underwriting' and Company Sanctioned Guidelines in effect on the date of such Insured Loan, unless a higher limit has been specifically approved by the Company and endorsed hereon."

## ELIGIBLE NOTE

The sentence in Paragraph 1.b. (4) of the Provisions and Stipulations is hereby amended to read as follows:

"Is for an amount equal to the net proceeds of such note, as defined below, provided that the net proceeds of such note, plus the then unpaid net proceeds of any other loans (a) which have been made by the Assured to the same Borrower and which are insured by the Company do not exceed Two Hundred Fifty Thousand Dollars ($250,000), and that (b) such note meets all of the qualifications set forth in the Company's 'Qualifying Specifications for Guideline Underwriting' in effect on the date of the loan, except that notes for greater amounts may be insured hereunder by endorsement to this policy specifically identifying such notes."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____        _____
President                  Secretary

Countersigned at Chicago, Illinois this ___12th___ day of May _____ , 2005

_____     Authorized Representative

No. **T 62**

**CONFIDENTIAL**

**Renewal of**
**Policy No.** ................................

# CREDIT INSURANCE POLICY



## OLD REPUBLIC
### Insurance Company

*GREENSBURG, PENNSYLVANIA*
*A STOCK COMPANY*
(hereinafter called the Company)

In consideration of the stipulations and provisions hereinafter set forth and of the premium hereinafter specified, does insure

................................ GUARANTY HOME EQUITY CORPORATION ....................................................
a corporation organized under the laws of ...WISCONSIN........................., hereinafter called the Assured, whose address is ...................................... Milwaukee, Wisconsin ...................................................., against loss (only as herein defined and limited) due to Default by a Borrower from the Assured in the repayment to the Assured of Loans evidenced by Eligible Notes, reported to the Company and insured hereunder which were made to finance the alteration, repair, conversion, improvement or modernization of real property.

This Policy shall be effective from the........1........day of......September..........., 20....01....., at 12:01 A.M. at the place of business of the Assured and shall remain in force continuously until cancelled. The coverage afforded by this Policy shall attach to a particular loan coincident with the actual disbursement by the Assured of the Loan during such period.

The Assured shall pay the Company a premium calculated upon the entire term of the Note at the rate of.......0.80........% per annum of the net proceeds (as hereinafter defined) of any Loan reported for insurance, which premium shall be payable within 15 days after the close of the month in which the Loan is made or purchased. In computing the premium, no charge shall be made for a fractional period of a month consisting of 15 days or less and a charge for a full month shall be made for a fractional period of a month consisting of more than 15 days.

Loans shall be reported to the Company for insurance on the form prescribed by the Company within 15 days after the close of the month in which the Loan is made or purchased.

The Company's liability for loss with respect to any Insured Loan or Loans to an individual Borrower who defaults to the Assured hereunder shall be limited to five thousand dollars ($5,000.00) unless a higher limit is specifically approved by the Company and is endorsed hereon. The Company's maximum cumulative liability for Loss under this Policy is further limited to ten percent (10%) of the Aggregate net proceeds of loans insured hereunder made by the Assured during the 12 month period immediately following the effective date of this Policy and during each succeeding 12 month period in which this Policy is in full force and effect. The Company's maximum liability under this Policy shall in no event exceed $.88,000,000 during each such 12 month period.

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated which are hereby made part of this Policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

IN WITNESS WHEREOF, the Company has duly executed these presents; but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Countersigned this ...... *1 7 th* ..................................

day of ...*SEPTEMBER*........., 20 *01* .......

**OLD REPUBLIC INSURANCE COMPANY**

By ......................................................
*Authorized Representative*

_____
*President*

_____
Spencer LeRoy II
*Secretary*

ICS-1C—Rev. 8/59

(11/99)

**EXHIBIT B**

# PROVISIONS AND STIPULATIONS

## 1. DEFINITIONS

a. "Loan" means an advance of funds, or the purchase of an obligation, evidenced by an Eligible Note, the proceeds of which have been or are to be used for the alteration, repair, conversion, improvement or modernization of real property located within the continental limits of the United States of America.

b. "Eligible Note" or "Note" means any written evidence of obligation, including a note, bond, mortgage or indenture which:

(1) Bears the genuine signature of the Borrower and all other parties to the instrument, is complete and regular on its face, and is valid and enforceable against the Borrower; and

(2) Contains an acceleration clause which provides for acceleration of maturity either automatically or at the option of the holder, in the event of default in payment of any installment upon the due date thereof; and

(3) Contains payment and maturity requirements meeting the following specifications: The Note shall be payable in approximately equal monthly installments, the first of which shall fall due within six months and the last within sixty months and 32 days from the date of the Note. If the principal income of the Borrower is derived from a seasonal operation or business, the Note may be made payable in installments corresponding with the seasonal variation in Borrower's income shown on his application for credit; provided the first installment is payable within twelve months of the date of the Note; and further provided that the sum of installments to be paid in any year subsequent to the first year shall not be greater than the proportion of the total debt which is to be paid in the first year; and further provided that a token payment is due in each off-season month; and

(4) Is for an amount such that the net proceeds, as defined below, of such note plus the then unpaid net proceeds of any other loans insured by the Assured to the individual Borrower making the note are not in excess of $5,000.00, except that specified notes for greater amounts may be insured hereunder upon endorsement of this policy specifically insuring such notes.

c. "Borrower" means one, whether individual, partnership, corporation or other legal entity, who applies for and receives a Loan, evidenced by an Eligible Note, and whose interest in the real property to be improved is:

(1) A fee title; (2) a life estate; (3) a leasehold estate having a fixed term expiring after the maturity of the Note; or (4) an equitable interest under a contract or deed of trust to create an interest in real property of the character described in (1), (2) or (3). No such person shall be accepted by the Assured as a Borrower if such person is past due more than fifteen days as to the payment of an obligation owed the Assured or any obligation insured by the Company or is past due more than thirty days as to the payment of any other indebtedness evidenced by a note, bond or contract signed by such person and the Assured through its usual credit investigation is placed on notice of such fact or facts, unless other circumstances known to the Assured make a loan to such person a credit risk acceptable to a prudent lender.

d. "Payment" or "Installment" means a deposit by the Borrower with the Assured of funds which represent the full or partial repayment of a Loan according to the terms of the Note evidencing such Loan.

e. "Default" means the failure of the Borrower to make any payment to the Assured at the time and in the manner and amount specified in the Note evidencing the Loan.

f. "Date of Default" means the earliest date upon which an installment or payment was due which was not paid by the Borrower according to the terms of the Note.

g. "Loss" means the amount payable to the Assured by the Company as provided in paragraph 5 hereof.

h. "Net Proceeds" means the amount of the loan actually made or the purchase price of the note, exclusive of finance charges, fees, and other deductions.

## 2. CONDITIONS PRECEDENT TO RECOVERY

Prior to making a Loan, the Assured shall obtain a dated credit application fully executed by the Borrower. The credit application supplemented by such other information as the Assured deems necessary, must, in the judgment of the Assured, clearly show the Borrower to be solvent, with reasonable ability to repay the Loan, and in other respects a reasonable credit risk. If, after the Loan is made, the Assured discovers any material misstatements in the credit application, or misuse of the proceeds of the Loan by the Borrower, the Assured shall promptly report such discovery to the Company.

The Assured shall exercise due diligence in disbursing proceeds of loans and in effecting collections and shall service its Loans in accordance with acceptable practices of prudent lending institutions.

All payments received on account of the Note, except late charges, must be applied to the maturing installments in their order, except that any sum received by the Assured in excess of three advanced monthly payments shall be credited to the final installments in the absence of specific written instructions from the Borrower to do otherwise.

Claim may be made after Default provided written demand has been made on the Borrower for the full unpaid balance of the Note. The Company reserves the right to require the Assured to reduce the Note to judgment subject to the limitations of the terms of the Note.

## 3. NOTICE OF DEFAULT AND FILING OF CLAIMS FOR LOSS

Should a Default continue for a period of 90 days, notice thereof must be filed with the Company monthly thereafter, on the form prescribed by the Company until the Default is cured or a claim of Loss filed. A claim for Loss may be filed as to an individual Loan at any time after Default but in no event later than six months after Default unless the Company shall grant an extension of the claim period in writing. Claims shall be filed on Proof of Loss forms provided by the Company, which shall include an assignment of the Assured's interest in the defaulted Note to the Company or such other person as may be designated by the Company as assignee.

4. **PAYMENT OF LOSS**

All adjusted claims shall be paid or made good within thirty days after presentation of satisfactory evidence of Loss to the Company.

5. **LIMIT OF LOSS**

In addition to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Note or of the actual purchase price thereof, whichever is lesser, less the unearned discount thereon, plus

   a. uncollected earned interest to date of Default and interest at the rate of 4% per annum from the date of Default to the date of presentation of Proof of Loss; plus

   b. uncollected court costs (including fees paid for issuing, serving and filing summons); plus

   c. attorneys' fees actually paid, not exceeding:

      (1) 25 percent of the amount collected by the attorney on the defaulted Note provided the Assured does not waive its claim against the Borrower for such fees; plus

      (2) $25.00 or 15 percent of the balance due on the Note, whichever is the lesser, if a judgment is secured by suit, or $10.00 or 15 percent of the balance due on the Note, whichever is the lesser, if a judgment is secured by confession after default; plus

      (3) $50.00 plus 5 percent of the balance due on the Note as an additional fee where the action is contested and judgment is obtained;

less any part of the foregoing amounts which the Assured has collected from others, or which the Assured can collect from a reserve or holdback funds in its hands.

6. **SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to all of the Assured's rights of recovery against the Borrower and any other person or organization liable under the terms of the defaulted Note and against any reserve or holdback funds in its hands, and the Assured shall execute and deliver at the request of the Company instruments and papers and do whatever else is necessary to transfer, assign and secure such rights. The Assured shall do nothing after Loss to prejudice such rights, and the execution by the Assured of a release or waiver of the right to collect the unpaid balance of a Loan shall equally release the Company from any further obligation under this Policy as to said Loan, anything in this Policy to the contrary notwithstanding.

7. **TRANSFER OR PREPAYMENT OF LOANS REPORTED FOR INSURANCE**

All liability under this Policy with respect to any individual loan shall terminate upon sale or transfer (including without limiting the generality of application of this section, transfers pursuant to, or resulting from merger or consolidation of the Assured with any other corporation or company) of such loan, or the note evidencing same, to any transferee not holding a similar Policy issued by the Company.

Such sales or transfers may be made to a transferee holding a similar Policy issued by the Company only with the prior written approval of the Company. In the event of such a sale or transfer, the continuing liability of the Company to the transferee with regard to the loan or loans sold or transferred shall be ten percent of the aggregate unpaid balance of the net proceeds of such loan or loans at the time of transfer or sale, and the aggregate limit of liability of the Company to the Assured hereunder shall be reduced by an equal amount.

In no event will the Company refund any premium to the Assured upon the sale or transfer of any loan or loans insured hereunder.

Nothing contained herein shall be construed to prevent the pledging of such loans, or the notes evidencing the same, as collateral security under a bona fide loan agreement.

In the event that the Borrower shall prepay an eligible loan for which the required premium has been paid by the Assured to the Company, upon receipt of a report of such prepayment and application for premium refund on the form prescribed by the Company, the Company shall return to the Assured a premium refund calculated according to the sum-of-the-digits method, and the aggregate cumulative liability of the Company hereunder shall be reduced by ten percent of the original net proceeds of said loan.

8. **REPORTS AND EXAMINATION**

The Company may at any time call upon the Assured for such reports as it may deem necessary and may inspect the books or the Accounts of the Assured as they pertain to the Loans reported for insurance hereunder. All Loans reported to the Company for insurance hereunder shall be identified by methods satisfactory to the Company on the records of the Assured.

9. **AMENDMENTS**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy. The terms of this Policy may be waived or changed only after written approval of the Company and by an endorsement signed on behalf of the Company by its President, Vice President or Secretary and countersigned by a duly authorized representative of the Company.

10. **MISREPRESENTATION AND FRAUD**

The Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a loss, or if the Assured shall make any claim which is false or fraudulent either in amount or otherwise.

11. **OTHER INSURANCE**

If at the time of Loss or Default there is any other valid and collectible insurance which would attach if this

insurance had not been effected, this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

**12. ASSIGNMENT OF POLICY**

This Policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

**13. SUIT AGAINST COMPANY**

No suit, action or proceeding for the recovery of any claim under this Policy shall be instituted or sustainable in any court of law or equity unless Proof of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within twelve months next after Default; provided, however, that if by the laws of the State within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceedings be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

**14. CANCELLATION**

This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than five days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Assured or by the Company shall be equivalent to mailing.

Cancellation of this Policy shall not affect the insurance privilege of the Assured with respect to any loan previously reported for insurance.

**15. CONFORMITY TO STATUTE**

Terms of this Policy which are in conflict with the statutes of the State wherein this Policy is issued are hereby amended to conform to such statutes.



No. T 62

Renewal of Policy No. _____

**OLD REPUBLIC**
Insurance Company

GREENSBURG, PENNSYLVANIA

(A STOCK COMPANY)

ISSUED TO
GUARANTY HOME EQUITY CORPORATION
Milwaukee, Wisconsin

**CREDIT INSURANCE POLICY**

ICS-1C—Rev. 8/59

(11/99)

# ENDORSEMENT

This endorsement, effective    September 1, 2001  , forms a part of Policy No. T 62

issued to    GUARANTY HOME EQUITY CORPORATION     Milwaukee, Wisconsin

by **OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania**

## LOAN LIMITATION
## CREDIT INSURANCE POLICY

The First sentence of the fifth paragraph of the policy is hereby amended to read as follows:

"The Company's liability for loss with respect to the Insured Loan of any one borrower shall be limited to Two Hundred Fifty Thousand Dollars ($250,000), provided such Insured Loan meets all of the qualifications set forth in the Company's 'Qualifying specifications for Guideline Underwriting' and Company Sanctioned Guidelines in effect on the date of such Insured Loan, unless a higher limit has been specifically approved by the Company and endorsed hereon."

## EXTENDED TERM

The first sentence in 1.b. (3) of the provisions and Stipulations of the policy is hereby amended to read as follows

"Contains payment and maturity requirements meeting the following specifications: The Note shall be payable in approximately equal monthly installments, the first of which shall fall due within six months and the last within 360 months and 32 days from the date of the Note."

## ELIGIBLE NOTE

The sentence in Paragraph 1.b. (4) of the Provisions and Stipulations is hereby amended to read as follows:

"Is for an amount equal to the net proceeds of such note, as defined below, provided that the net proceeds of such note, plus the then unpaid net proceeds of any other loans (a) which have been made by the Assured to the same Borrower and which are insured by the Company do not exceed Two Hundred Fifty Thousand Dollars ($250,000), and that (b) such note meets all of the qualifications set forth in the Company's 'Qualifying Specifications for Guideline Underwriting' in effect on the date of the loan, except that notes for greater amounts may be insured hereunder by endorsement to this policy specifically identifying such notes."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreement limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                              Secretary

Countersigned at Chicago, Illinois this ___16th___ day of ___October_____, 2001

                                       Authorized Representative



**OLD REPUBLIC**
Insured Credit Services, Inc.

## GB Home Equity – ORICS Insured Home Equity Program Guidelines

POLICY YEAR POOL COVERAGE: 10%

POLICY DEFICIANCY COVERAGE: In excess of the policy pool coverage secondary protection is provided on all individual loans ≥ 90% to cover deficiency loss to the level of 89.9%

LOAN-TO-VALUE RATIO
INCLUDING NEW LOAN: 0% to 100%

LOWEST SCORE: As Stated on Lender Credit Policy Guidelines

DEBT RATIO: As Stated on Lender Credit Policy Guidelines

MINIMUM LOAN AMOUNT: Per Lender Guidelines

MAXIMUM LOAN AMOUNT: $200,000 (see Lender Credit Policy Guidelines for further limitations)

LOAN TYPE: As Stated on Lender Credit Policy Guidelines

PROPERTY TYPE: One to Four Family Dwellings includes Condominiums and Year Round Vacation Homes (excludes mobile homes)

MAXIMUM TERM: Set by Lender (Maximum 30 years)

VALUE DETERMINATION: Lenders preferred method (Loans over $100,000 must be documented by formal appraisal, using original purchase price, or tax assessment)

OWNERSHIP VERIFICATION: Yes

HOMEOWNER INSURANCE NAMING
LENDER AS LOSS PAYEE Yes

OWNER OCCUPIED: Yes (Excludes - Second, New Construction, Seasonal Vacation, Mobil or Modular homes, Commercial or Vacant property)

TYPE: As Stated on Lender Credit Policy Guidelines

TIME AT EMPLOYMENT: 2 Years, same field

INCOME VERIFICATION: Per Lender Guidelines

PURPOSE: Second Deed of Trust -- Purchase or Refinance

CONSUMER DEBT: Per Lender Guidelines

MORTGAGE HISTORY: Per Lender Guidelines

BANKRUPTCY/FORCLOSURE: Per Lender Guidelines

ADDITIONALCREDIT CRITERIA
FOR INSURABILITY: Per Lender Credit Criteria

Acknowledged: _____ J.J. MUNDWILER

Title: PRESIDENT

Date: 7/3/01

"Sanction" ORIC Insured Guidelines

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to GUARANTY HOME EQUITY CORPORATION     Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that Paragraph 5. a. is amended to read as follows:

"uncollected earned interest to the date of presentation of Proof of Loss; plus"

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                                          Secretary

Countersigned at Chicago, Illinois this ___17th___ day of _September_ _____, 2001

ative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to GUARANTY HOME EQUITY CORPORATION    Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

This endorsement is issued in consideration of the Assured's request for the change in the mode of premium permitted herein.

1.  Section 7 entitled "Transfer or Prepayment of Loans Reported for Insurance" is deleted and the following is substituted therefor:

    All liability under this Policy with respect to any individual loan shall terminate upon sale or transfer (including, without limiting the generality of application of this section, transfers pursuant to, or resulting from, merger or consolidation of the Assured with any other corporation or company) of such loan, or the note evidencing same, to any transferee not holding a similar Policy issued by the Company. In the event of such a sale or transfer, the aggregate liability of the Company to the Assured hereunder shall be reduced by ten percent of the original net proceeds of such loan or loans.

    Such sales or transfers may be made to a transferee holding a similar Policy issued by the Company only with the prior written approval of the Company. In the event of such a sale or transfer, the continuing liability of the Company to the transferee with regard to the loan or loans sold or transferred shall be ten percent of the aggregate unpaid balance of the net proceeds of such loan or loans at the time of transfer or sale, and the aggregate limit of liability of the Company to the Assured hereunder shall be reduced by an equal amount. In the event of approved sale or transfer, the Assured shall remain liable for all monthly premium payments.

    Nothing contained herein shall be construed to prevent the pledging of such loans, or the notes evidencing the same, as collateral security under a bonafide loan agreement.

2.  The second paragraph of Section 14 entitled "Cancellation" is deleted, and the following is substituted therefor:

    Cancellation of this policy shall not affect the insurance coverage on loans previously reported for insurance, and the Assured shall continue to remit monthly premium payment with respect to all such loans.

3.  All other provisions of the policy shall remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____              _____
                                      Secretary

Countersigned at Chicago, Illinois this ___17th___ day of ___September___ _____, 2001

_____              _____
                                      Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to     GUARANTY HOME EQUITY CORPORATION      Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that effective September 1, 2001 the Assured shall pay the Company a premium calculated at the rate of .080% on the unpaid balance outstanding at the beginning of every month of any loan reported for insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____
President

_____
Secretary

Countersigned at Chicago, Illinois this ___30th___ day of _November_____, 2001

_____
Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to     GUARANTY HOME EQUITY CORPORATION       Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is understood and agreed that the term "Loan" in item a under section 1, Definitions, is hereby amended to mean an advance of funds, evidenced by an Eligible Note, the proceeds of which have been or are to be used for any purpose which, in the judgment of the Assured, is or shall be worthwhile to the Borrower and shall generally improve the living standards of the Borrower.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                                  Secretary

Countersigned at Chicago, Illinois this __17th__ day of __September_____, 2001

Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to GUARANTY HOME EQUITY CORPORATION      Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## WISCONSIN AMENDATORY ENDORSEMENT

It is understood and agreed that Section 9 of the Provisions and Stipulations of the Policy to which this endorsement is attached and made a part is hereby amended to include the following paragraph:

"Notwithstanding the other provisions of this Section 9, the Company is deemed to know any fact material to the risk or which breaches a condition of the Policy, if the agent who bound the Company or issued the Policy or transmitted the application to the Company knew it at the time the agent acted, or if thereafter any of the Company's agents with whom the Assured is then dealing as agent of the Company learns it in the course of the agent's dealing with the Assured, and knows that it pertains to a policy written by the Company."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____
President

_____
Secretary

Countersigned at Chicago, Illinois this 17th day of September, 2001

_____
AuthorizedRepresentativ

# ENDORSEMENT

This endorsement, effective September 1, 2001, forms a part of Policy No. T 62

issued to     GUARANTY HOME EQUITY CORPORATION     Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that effective September 1, 2001 the Assured shall pay the Company a premium calculated at the rate of .080% on the unpaid balance outstanding at the beginning of every month of any loan reported for insurance.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

President                              Secretary

Countersigned at Chicago, Illinois this __30th__ day of __November__ _____, 2001

_____ Authorized Representative

# ENDORSEMENT

This endorsement, effective September 1, 2001 , forms a part of Policy No. T 62

issued to Guaranty Home Equity Corporation

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

## First Adjustment Amendment
### To
## Retroactive Rating Endorsement
### To
## Credit Insurance Policy

Effective September 1, 2001 , the first calculation period in the unnumbered paragraph of the Retroactive Rating Endorsement beginning with the phrase, "The first such calculation" is hereby amended to read as follows: follows:

> "The first such calculation shall cover the one-year period beginning with the effective date of the first Retroactive Rating Endorsement attached to the Policies and shall be made within three months following the expiration of such one-year period."

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

_____  
President

_____  
Secretary

Countersigned at Chicago, Illinois this 18th day of October, 2001

_____  
**Authorized Representative**

# ENDORSEMENT

This endorsement, effective October 1, 2001, forms a part of Policy No. T 62

issued to GUARANTY HOME EQUITY CORPORATION     Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

It is hereby understood and agreed that the effective date of the
Policy of which this endorsement forms a part is amended to be
October 1, 2001.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,
agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the
Company.

Attest:

President                Secretary

Countersigned at Chicago, Illinois this ___18th___ day of _October_____, 2001

_____ Authorized Representative

# ENDORSEMENT

This endorsement, effective **September 1, 2001,** forms a part of Policy No. **T 62**

issued to **GUARANTY HOME EQUITY CORPORATION**          Milwaukee, Wisconsin

by **OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania**

## SALVAGE AMENDMENT TO
## RETROACTIVE RATING ENDORSEMENT

It is hereby understood and agreed that in calculating losses incurred, the Company shall provide a credit of 50% of the amount of net recoveries, for purposes of computing interim adjustments in accordance with the Retroactive Rating Endorsement attached to and forming part of Policy No. T 62.

It is further understood and agreed that no additional recovery credit will be made following the calculation of the final adjustment computed under the provisions of the Retroactive Rating Endorsement attached to and forming part of Policy No. T 62.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____          _____
President                         Secretary

Countersigned: _____, 2001   ACCEPTED _____, 2001

By: _____          _____
(Authorized Representative)           (Assured)

                                   By: _____
                                       TITLE  PRESIDENT

# ENDORSEMENT

This endorsement, effective October 1, 2001, forms a part of Policy No. T 62

Issued to Guaranty Home Equity Corporation

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective November 27, 2001, the Company's maximum cummulative liability for Loss under this Policy as stipulated in paragraph 5 of page 1 of such Policy is amended to be ten (10%) per cent of the aggregate Net Proceeds of Loans insured hereunder made by the Assured during the twelve (12) month period immediately following the effective date of this Policy and during each succeeding twelve (12) month in which this Policy is in full force and effect.

The Company's maximum liability under this Policy shall in no event exceed $ 88,000,000 during each such twelve (12) month period.

It is further understood and agreed that in the event such twelve (12) month period, liability has been exhausted, further insurance coverage is provided only on Loans reported for insurance by the Assured as having a loan-to-value ratio of over 89.99% at the time the Loan was made. A claim may then be filed if the Assured has obtained merchantable title on all collateral securing the Loan, has sold such collateral, and has established a deficiency between the full unpaid balance of the Note and the net proceeds for the sale of all collateral after satisfaction of the first lien against such collateral.

In addition, to the limitations heretofore set out, the Company shall be obligated to pay hereunder only the full unpaid balance of the Note, after sale of all collateral securing the Note, or the amount remaining over the 89.99% loan-to-value ratio, whichever is the lesser.

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

_____          _____
President                               Secretary

Countersigned at Chicago, Illinois this 27th day of November, 2001

_____          **Authorized Representative**

END OBP—007
ORICS-OBP—Rev. 11-01

It is agreed that the premium collected under this policy and all renewals of it to which this or a similar Retroactive Rating Endorsement is attached (the Policies) shall, until termination of this or such similar endorsement, be subject to a final rating adjustment three (3) months after the maturity or other disposition of all loans reported for insurance during the periods of coverage of such Policies and such endorsements. This adjustment shall be based on the cumulative loss experience developed with respect to such loans, as follows:

> If the cumulative losses incurred shall equal 55% to 60% inclusive of the cumulative earned premium, the rate shall be the base rate specified in the current policy.

> If the cumulative losses incurred are less than 55% of the cumulative earned premium, the rate shall be adjusted retroactively on the basis of the following formula:

>> The difference between the cumulative loss ratio (cumulative losses incurred divided by cumulative earned premium) and 55% shall be multiplied by 1.5 and the product shall in turn be multiplied by the cumulative earned premium. The product of this second multiplication shall be the amount of the current downward adjustment.

> If the cumulative losses incurred shall exceed 60% of the cumulative earned premium, the excess percentage shall be multiplied by 1.5 and the product shall in turn be multiplied by the cumulative earned premium. The product of this second multiplication shall be the amount of the current upward adjustment.

Losses incurred shall be 1.075 of the sum of the actual paid losses, plus pending and anticipated losses, to allow for loss adjustment expense.

In no event shall any downward adjustment reduce the cumulative earned premium below the cumulative earned premium calculated at the minimum premium rate of $ .50 per $1,000 per month nor shall any upward adjustment increase the cumulative earned premium above the cumulative earned premium calculated at the maximum premium rate of $ 1.00 per $1,000 per month on the month-end outstanding balances insured under the Policies.

The first such calculation shall cover the two-year period beginning with the effective date of the first Retroactive Rating Endorsement attached to the Policies and shall be made within three months following the expiration of such two-year period. Subsequent interim computations of the retroactive rating premium shall be made annually thereafter based on the cumulative experience of the Policies until a final retroactive rating adjustment is determined three months after all loans insured under the Policies have been repaid in full or otherwise disposed of. In determining the amount of any downward adjustment to be paid to the insured, the amount of any prior downward adjustments returned to the insured shall be deducted from the downward adjustment determined by the formula above.

One-half of any current downward adjustment determined hereunder shall be returned to the Assured at the time the computation is submitted to the Assured. The remainder shall be retained by the Company in a premium stabilization reserve retained by the Company with respect to the Policies; provided, however, that if the amount in such premium stabilization reserve shall exceed 100% of the estimated premium for the next succeeding twelve-month period, the Company shall return such excess to the Assured. Up to 50% of the amount in the premium stabilization reserve in any year may be used to pay any upward adjustment required by the retrospective premium calculation for that year. After the final adjustment, any amount remaining in such premium stabilization reserve shall be returned to the Assured, but no returns shall be made after the termination of the last Policies or of the Retroactive Rating Endorsement attached to the last of the Policies until the final adjustment is made.

The Assured shall pay to the Company the amount of each current upward adjustment within ten days after receiving the computation showing that it is due.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the policy or any endorsement attached thereto, except as herein set forth.

This endorsement shall become effective September 1, 2001, but shall not be valid until countersigned by a duly authorized representative of the Company.

Attached to and forming a part of Policy No. T 62, of the Old Republic Insurance Company issued to GUARANTY HOME EQUITY CORPORATION

ATTEST: _____ President

_____ Secretary

Countersigned: Chicago, Illinois  9/01  2001  ACCEPTED: _____

By: _____ (Authorized Representative)

_____ (Assured)

# ENDORSEMENT

This endorsement, effective  September 1, 2001,  forms a part of Policy No.  T 62

issued to  GUARANTY HOME EQUITY CORPORATION          Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

The first sentence in section b (3) of the Definitions is hereby amended to read as follows:

> "Contains payment and maturity requirements meeting the following specifications:  The Note shall be payable in monthly instalments, the first of which shall fall due within six months and the last within 360 months and 32 days from the date of the Note."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest: _____

President                                    Secretary

Countersigned at Chicago, Illinois this __17th__ day of __September_____, 2002

_____ Authorized Representative

# GB Home Equity - ORICS Insured Home Equity Program Guidelines

| | |
|---|---|
| Policy Year Pool Coverage: | 10% |
| Policy Deficiency Coverage: | In excess of the policy pool coverage secondary protection is provided on all individual loans ≥ 90% to cover deficiency loss to the level of 89.9% |
| Loan to value ratio including new loan: | 0% to 100% |
| Lowest Score: | As Stated on Lender Credit Policy Guidelines |
| Debt Ratio: | As Stated on Lender Credit Policy Guidelines |
| Minimum Loan Amount: | Per Lender Guidelines |
| Maximum Loan Amount: | 250,000 (see Lender Credit Policy Guidelines for further limitations) |
| Loan Type: | As Stated on Lender credit Policy Guidelines |
| Property Type: | One to Four Family Dwellings includes Condominiums and Year Round Vacation Homes (excludes mobile homes) |
| Maximum Term: | Set by Lender, (Maximum 30 Years) |
| Value Determination: | Lenders preferred method (Loans over $100,000 must be documented by appraisal, original purchase price, or tax assessment, per lender guidelines) |
| Ownership Verification: | Yes |
| Homeowner Insurance Naming Lender As Loss Payee | Yes |
| Owner Occupied: | Yes (Excludes - New construction, Seasonal Vacation, Mobile, Commercial or Vacant property, per lender guidelines) |
| Type: | As Stated on Lender Credit Policy Guidelines |
| Time At Employment: | Per Lender Guidelines |
| Income Verification: | Per Lender Guidelines |
| Purpose: | Purchase or Refinance, Per Lender Guidelines |
| Consumer Debt: | Per Lender Guidelines |
| Mortgage History: | Per Lender Guidelines |
| Bankruptcy/Foreclosure: | Per Lender Guidelines |
| Additional Credit Criteria For Insurability: | Per Lender Guidelines |

Acknowledged: _[signature]_

Title: _PRESIDENT_

Date: _10/21/02_

# ENDORSEMENT

This endorsement, effective October 1, 2002, forms a part of Policy No. T 62

Issued to    GUARANTY HOME EQUITY CORPORATION                Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania


The policy is hereby amended to change the name of the Assured from
GUARANTY HOME EQUITY CORPORATION, Milwaukee, Wisconsin to GUARANTY
BANK FSB AND ITS SUBSIDIARIES, Milwaukee, Wisconsin.


Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions,
agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the
Company.

Attest:

President                                              Secretary

Countersigned at Chicago, Illinois this ___15th___ day of_October_____, 2002

Authorized Representative

## ENDORSEMENT

This endorsement, effective October 1, 2002, forms a part of Policy No. T 62

issued to Guaranty Bank FSB and its subsidiaries      Milwaukee, Wisconsin

by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective October 1, 2002, the first sentence in paragraph 1 of Section 2 in the section entitled "Conditions Precedent to Recovery" is hereby deleted in its entirety and replaced by the following:

"Prior to making a Loan, the Assured shall obtain a dated credit application or electronic application by the Borrower, Assured or agent for Borrower"

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

_____      _____
President                              Secretary

Countersigned at Chicago, Illinois this    15th    day of    October    2002

_____ Authorized Representative

# ENDORSEMENT

This endorsement, effective October 1, 2002 , forms a part of Policy No. T 62

issued to Guaranty Bank FSB and its subsidiaries        Milwaukee, Wisconsin

## by OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania

Effective  October 1, 2002,  the first paragraph of Section 14 in the section entitled "Cancellation" is deleted and replaced by the following:

"This Policy may be cancelled by the Assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective.  This Policy may be cancelled by the Company by mailing to the Assured at the address shown in this Policy or last known address written notice stating when, not less than six (6) months thereafter, such cancellation shall be effective, unless such cancellation is due to material breach of contract, change in risk or lack of prudent lending judgment, then such cancellation shall be effective not less than thirty (30) days thereafter."

*Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any endorsement attached thereto, except as herein set forth.*

*This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.*

Attest:

President            Secretary

Countersigned at Chicago, Illinois this   15th   day of    October     2002

**Authorized Representative**

# ENDORSEMENT

This endorsement, effective April 1, 2005, forms a part of Policy No. T 62

issued to GUARANTY HOME EQUITY CORPORATION      Milwaukee, Wisconsin

by **OLD REPUBLIC INSURANCE COMPANY, Greensburg, Pennsylvania**

### LOAN LIMITATION
### CREDIT INSURANCE POLICY

The First sentence of the fifth paragraph of the policy is hereby amended to read as follows:

"The Company's liability for loss with respect to the Insured Loan of any one borrower shall be limited to Two Hundred Fifty Thousand Dollars ($250,000), provided such Insured Loan meets all of the qualifications set forth in the Company's 'Qualifying specifications for Guideline Underwriting' and Company Sanctioned Guidelines in effect on the date of such insured Loan, unless a higher limit has been specifically approved by the Company and endorsed hereon."

### EXTENDED TERM

The first sentence in 1.b. (3) of the provisions and Stipulations of the policy is hereby amended to read as follows

"Contains payment and maturity requirements meeting the following specifications: The Note shall be payable in approximately equal monthly installments, the first of which shall fall due within six months and the last within 360 months and 32 days from the date of the Note."

### ELIGIBLE NOTE

The sentence in Paragraph 1.b. (4) of the Provisions and Stipulations is hereby amended to read as follows:

"Is for an amount equal to the net proceeds of such note, as defined below, provided that the net proceeds of such note, plus the then unpaid net proceeds of any other loans (a) which have been made by the Assured to the same Borrower and which are insured by the Company do not exceed Two Hundred Fifty Thousand Dollars ($250,000), and that (b) such note meets all of the qualifications set forth in the Company's 'Qualifying Specifications for Guideline Underwriting' in effect on the date of the loan, except that notes for greater amounts may be insured hereunder by endorsement to this policy specifically identifying such notes."

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the Policy or any Endorsement attached thereto, except as herein set forth.

This endorsement shall not be valid until countersigned by a duly authorized representative of the Company.

Attest:

_____     _____
President                                    Secretary

Countersigned at Chicago, Illinois this ___12th___ day of May _____, 2005

_____
Authorized Representative