# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br>    Plaintiff, <br><br> v. <br><br> OLD REPUBLIC INSURANCE COMPANY, <br><br>    Defendant. | Case No. 17-CV-734-JPS <br><br><br> **ORDER** |
| BMO HARRIS BANK NA, <br><br>    Plaintiff, <br><br> v. <br><br> OLD REPUBLIC INSURANCE COMPANY and FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br>    Defendants. | Case No. 17-CV-737-JPS <br><br><br> **ORDER** |
| BMO HARRIS BANK NA, <br><br>    Plaintiff, <br><br> v. <br><br> OLD REPUBLIC INSURANCE COMPANY and FEDERAL DEPOSIT INSURANCE CORPORATION, <br><br>    Defendants. | Case No. 17-CV-772-JPS <br><br><br> **ORDER** |

1. **INTRODUCTION**

The nearly decade-old dispute that underlies these cases involves the denial of insurance claims made following defaults on approximately two thousand home equity loans and lines of credit that BMO Harris NA ("BMO") and Guaranty Bank (now the Federal Deposit Insurance Company ("FDIC")) contend are covered under mortgage guaranty insurance policies issued by Old Republic Insurance Company ("Old Republic"). Case Number 17-CV-734 (the '734 case) and Case Number 17-CV-737 (the '737 case) were originally filed in Milwaukee County Circuit Court in 2009 and were consolidated by the circuit court for purposes of case management and discovery-related issues. The third companion case, Case Number 17-CV-772 (the '772 case), was originally filed in Milwaukee County Circuit Court in March 2017.

In May 2017, the FDIC was appointed as receiver for Guaranty Bank. On May 25, 2017, the FDIC removed the '734 and '737 cases to this Court, and on June 1, 2017 it removed the '772 case. The Court granted two motions to stay filed by the FDIC, the second of which ended on February 5, 2018.

A barrage of motion practice ensued. The parties bicker about the propriety of proceeding on an abridged state court record, seek to revisit many issues already decided while the cases were pending in state court, and, in the '772 case, disagree about whether the case should have been filed in the first place. Having reviewed the parties' pending motions, as well as their other submissions detailing their efforts toward resolution, several things are clear.

First, the motion filed by Old Republic to vacate certain rulings from the state court proceedings must be addressed first, as its resolution will

significantly affect the scope of the remaining litigation. The Court addresses that motion below.

Second, two of the pending actions, the '737 and '772 case, appear to suffer from a possible jurisdictional defect. As explained further below, the "state-law exception" to the subject-matter jurisdiction conferred by the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") might preclude this Court's ability to hear these cases. 12 U.S.C. § 1819(b)(2)(D). Until that issue is resolved, further action by this Court on those cases would be imprudent.

Third, even apart from the jurisdictional issue in two of these cases, the issues animating all three cases exclusively involve matters of state law and state procedure, and the Court is reluctant to wade unnecessarily into Wisconsin law if the parties are approaching a resolution that would eliminate the FDIC's interests in these cases. The Court will address at this juncture only the motions necessary to move the cases forward, and encourages the parties to alert the Court immediately of any resolution they reach in these cases.

Therefore, for the reasons explained below, and in the interest of judicial economy, the Court finds it prudent to grant the FDIC's motion to file an abridged state court record, grant Old Republic's motions to vacate in the '734 and '737 cases, deny without prejudice Old Republic's motion to dismiss in the '772 case, and stay the '772 case.

2. DISCUSSION

   2.1   Abridged State Court Record

Pursuant to 28 U.S.C. § 1446(a), a party who removes an action to federal court must file, along with its notice of removal, "a copy of all process, pleadings, and orders" that were filed in the state court action. The

FDIC did not file the entire state court record for the '734 and '737 cases upon removal. Instead, the FDIC filed (in each case) a motion for leave to file an abridged state court record, along with an addendum containing what it believes are the essential papers from the state court actions. (Case No. 17-CV-734, Docket #5; Case No. 17-CV-737, Docket #6). The complete state court records are incredibly voluminous, totaling hundreds of filings and docket entries and tens of thousands of pages.

Old Republic responded, stating its preference that the entire record be filed in each case, but requesting in the alternative permission to supplement the abridged record as necessary. (Case No. 17-CV-734, Docket #8; Case No. 17-CV-737, Docket #10). Since then, Old Republic filed three motions to supplement the state court record in the '734 case, four such motions in the '737 case, and one the '772 case. (Case No. 17-CV-734, Docket #21, #51, and #69; Case No. 17-CV-737, Docket #23, #31, #62, #79; Case No. 17-CV-772, Docket #49). Old Republic included with each motion a chart that details the state court filings it believes must be added to the federal court docket.

While proceeding on abridged records is certainly not the Court's preferred method, the Court is also mindful of the age and complexity of these cases and recognizes that not all of the state court filings will be relevant to the disposition of the remaining issues in these cases. The Court will, therefore, grant the FDIC's motions to file an abridged record and will also grant all of Old Republic's motions to supplement the record. The Court expects the parties to continue to supplement the record with any filings cited in their moving papers that are not already part of the record in this Court.

**2.2 Motions to Vacate**

The first of several motions filed in these cases seeking review or reconsideration is Old Republic's motion to vacate certain rulings made by the special master/referee ("special master") who was recruited to assist the state trial judge with pretrial matters. (Case No. 17-CV-734, Docket #17).[1] Specifically, Old Republic contends that the cases were referred to the special master in violation of the Wisconsin constitution. It asks the Court to vacate any rulings on dispositive motions decided by the special master and any other special master rulings to which Old Republic filed an objection, or an "exception" as it is known in Wisconsin procedure.

In 2010, the circuit court judge then presiding over the consolidated cases, Judge John DiMotto, appointed retired Chief Judge Michael J. Skwierawski as special master pursuant to Wisconsin Statutes section 805.06 for the purpose of "assisting the Court in coordinating pretrial matters and conducting and completing discovery in an orderly and efficient manner[.]" (Case No. 17-CV-734, Docket #2). The appointment order, or "reference order," gave the special master the "full authority of the Court" to "coordinat[e] and establish[] all pretrial procedures" and to "hear and decide . . . any other matters assigned to him by the Court including all pre-trial motions arising in this case which are . . . assigned to the [special master]." *Id.* at 2. The order also gave the special master "the duty and power to regulate and control all discovery matters and any discovery disputes[.]" *Id.* Exceptions to any decision made by the special

---

[1]Old Republic filed substantively identical motions to vacate in the '734 case, (Docket #17), and the '737 case, (Docket #19). For the sake of brevity, the Court will cite only to the docket entries in the '734 case. The Court's ruling will apply to all such motions.

master were to be presented to the circuit court, which would then review the filings submitted to the special master and would modify or set aside the special master's ruling only if it was "based on an erroneous exercise of discretion." *Id.* at 4. The only specific mention of dispositive motions in the reference order is as follows: "In the event any party objects to the scheduling of a motion for summary judgment or other dispositive motion on grounds that discovery necessary to the issues raised by the motion is not completed, such motion for rescheduling shall be heard and decided by the [special master]." *Id.* at 3.

On March 29, 2017, just two months before these cases were removed to this Court, the Wisconsin Supreme Court issued its decision in *State ex rel. Universal Processing Services of Wisconsin, LLC v. Circuit Court of Milwaukee County*, 892 N.W.2d 267 (Wis. 2017), holding that a reference order similar to the one entered by Judge DiMotto in this case violated the Wisconsin constitution. The court held that while circuit courts are undoubtedly empowered to appoint a referee to assist with certain functions of the judicial process, the Wisconsin constitution prohibits a circuit court from delegating the "judicial power" to a referee. *Id.* at 285. The core judicial powers that cannot be delegated include, for example, conducting trials, deciding dispositive motions, and determining fundamental rights. *Id.* The order at issue in *Universal Processing* impermissibly delegated the judicial power because it "enable[d] the referee to hear and decide all motions filed, whether discovery or dispositive, subject to review under the standard of erroneous exercise of discretion." *Id.*

The court further held that the reference order's erroneous exercise of discretion standard of review violated the Wisconsin constitution's

provision of appellate authority. *Id.* at 286–87. The state legislature has not granted the circuit courts appellate jurisdiction over rulings by referees. *Id.* By utilizing what was in effect an "abuse of discretion" standard, the reference order impermissibly placed the circuit court in an appellate role. *Id.* The court rejected the argument that the constitutional infirmity was "cured" because the referee's decisions were actually reviewed *de novo* by the circuit judge, stating that regardless of the standard applied, the nature of the reference order itself was subject to scrutiny. *Id.* at 285–86.

In light of its holding, the court vacated all rulings by the special master on dispositive motions and any ruling of the special master relating to discovery to which either party had filed an objection. *Id.* at 291. Any discovery ruling of the special master to which the parties agreed to abide was left in effect. *Id.*

Old Republic contends that the reference order in these consolidated cases is materially identical to the reference order in *Universal Processing* and therefore also violates the Wisconsin constitution. For its remedy, Old Republic seeks vacatur of: (1) each ruling of the special master on a discovery dispute as to which Old Republic filed an exception; (2) each ruling of the Special Master on a dispositive issue; and (3) each ruling by the circuit court that adopted the special master's ruling on a dispositive issue. (Case No. 17-CV-734, Docket #17 at 3). The FDIC opposes Old Republic's motion to vacate, primarily arguing that the reference order in these cases is materially different from the order in *Universal Processing* because it did not delegate to the special master authority to decide dispositive motions.

The parties' first disagreement, though, is about what law applies to the motion. The FDIC argues that because these actions have been removed,

all of the prior orders of the state court are now deemed orders of this Court. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("A removed action proceeds as if it had originally been brought in federal court; thus, we take the case as though everything done in the state court had been done in the federal district court."). According to the FDIC, then, *Universal Processing* has no bearing on this action because it rests on an interpretation of Wisconsin constitutional law. Appointment of special masters in federal court is governed by Rule 53.

Old Republic counters, and the Seventh Circuit holds, that "[b]ecause federal procedure does not apply until removal occurs, Fed. R. Civ. P. 81(c), we apply state rules to preremoval conduct." *Price v. Wyeth Holding Corp.*, 5050 F.3d 624, 628 (7th Cir. 2007) (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001)). Rule 81(c) clearly states that "[t]hese rules apply to a civil action *after* it is removed from a state court." Fed. R. Civ. P 81(c) (emphasis added). This Court agrees, then, that while Rule 53 might apply to future actions of a special master appointed by this Court, Wisconsin law alone determines whether the reference order was procedurally valid. To the extent there is any inconsistency between this holding and *Williams* (and it is not clear that this is the case), this Court is constrained to apply the plain language of Rule 81 and *Price*'s later-in-time holding. Therefore, the rule from *Universal Processing* governs whether the reference order entered in these cases is lawful.

Applying the holding of *Universal Processing*, it appears that the "erroneous exercise of discretion" standard of review mandated by the reference order in these cases violates the Wisconsin constitution. As in *Universal Processing*, the order here provides that only those rulings of the special master to which exceptions are filed will be reviewed by the circuit

court, and those rulings will be modified or set aside only if the circuit court determines that the special master erroneously exercised his discretion in reaching his decision. Under *Universal Processing,* this lenient of standard of review, even as it relates to discovery and other non-dispositive issues, is unconstitutional in the context of a reference order.

Whether the reference order impermissibly delegated the core judicial power of deciding dispositive issues to the special master is not as clear. The order at issue in *Universal Processing* stated that "[a]ll motions filed, *whether discovery or dispositive*, shall initially be heard and decided by the [special master], subject to review processes available as described below." *Universal Processing,* 892 N.W.2d at 274 (emphasis added). Several dispositive motions were submitted to and decided in the first instance by the special master. *Id.* at 275. Here, the reference order empowers the special master to hear and decide "all pre-trial motions arising in this case which are hereby assigned to the [special master]" and goes on to specifically address the special master's role in discovery disputes but not dispositive motions. (Case No. 17-CV-734, Docket #2 at 2). The only time dispositive motions are mentioned in the reference order at issue here is to explain the special master's role in scheduling them. *Id.* at 3.

The problem comes into focus with regard to a dispositive issue that was resolved first by the special master and then by the circuit court judge: the applicability of Wisconsin Statutes section 631.11(4)(b), which governs the circumstances under which an insurer may rescind a policy or assert a general defense to all claims under the policy. In the context of a discovery dispute in April 2013, the special master decided that Section 631.11(4)(b) applied to bar Old Republic from asserting grounds for any individual claim denial that it did not first bring to the banks' attention within sixty

days of obtaining knowledge of the existence of facts giving rise to those grounds for denial. (Case No. 17-CV-734, Docket #19-11 at 7-9). The special master noted in his order that the ruling was made for the purpose of facilitating ongoing discovery but was subject to any future order by the circuit court judge on the applicability of the statute. *Id.* at 8. Judge Richard Sankovitz, who had taken over the case from Judge DiMotto, thereafter set a schedule and page limits for briefing of the Section 631.11(4)(b) issue, treating it like a dispositive motion. He ultimately issued a decision and order in which he arrived at the same result as did the special master regarding the applicability of Section 631.11(4)(b)—he therein "affirm[ed] the Special Master's decision"—but came to his conclusion by way of a different analysis. (Docket #2-18 and #25-11 at 5). The order does not explain what standard of review, if any, Judge Sankovitz applied to arrive at his conclusion.

Ultimately, this ambiguity does not affect the outcome of the pending motions to vacate. If Judge Sankovitz treated the Section 631.11(4)(b) issue as a discovery ruling by the special master which he then reviewed for erroneous exercise of discretion, Judge Sankovitz's order must be vacated for the reasons explained above. If, on the other hand, he treated the Section 631.11(4)(b) issue as a dispositive ruling made by the special master which he then reviewed *de novo* (which appears more likely), his order still must be vacated. The *Universal Processing* court rejected the argument that a circuit court's *de novo* review of a special master ruling would "cure" the constitutional defect stemming from a reference order that prescribed an erroneous exercise of discretion standard. *Universal Processing*, 892 N.W.2d at 286. It is the nature of the reference order, not the conduct of the circuit court, that must be scrutinized for constitutionality.

*Id.* The reference order here directs that any special master ruling reviewed by the circuit court upon an exception will be overturned only for an erroneous exercise of discretion. That is sufficient to warrant vacatur under *Universal Processing.*

Therefore, the Court will vacate all rulings of the special master to which any party filed an exception, and rulings of the circuit court either affirming or overturning the special master's rulings, including Judge Sankovitz's May 23, 2017 order affirming the special master's ruling on the applicability of Section 631.11(4)(b).

### 2.3 Subject-Matter Jurisdiction

Next, the Court expresses serious reservations at this juncture about the propriety of its ongoing exercise of subject-matter jurisdiction in the '737 and '772 cases. As explained above, FIRREA creates federal question jurisdiction over civil suits involving the FDIC. 12 U.S.C. § 1819(b)(2)(A). But there is an exception to this jurisdiction, often referred to as the "state-law exception," which is triggered for any action

- (i) to which the [FDIC], in the [FDIC]'s capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
- (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
- (iii) in which only the interpretation of the law of such State is necessary.

12 U.S.C. § 1819(b)(2)(D).

Where a complaint invokes only state law on its face, the availability of a colorable federal-law defense places the case outside the state-law

exception. *See Holmes v. F.D.I.C.*, No. 11-CV-211, 2011 WL 1750227, at *1–2 (E.D. Wis. May 6, 2011) (citing cases). In the '737 and '772 cases, where the FDIC is not the plaintiff, the FDIC's notices of removal attest that the state-law exception does not apply because "the FDIC-R will assert—among other things—colorable federal defenses and statutory special powers." (Case No. 17-CV-737, Docket #1 at 3; Case No. 17-CV-772, Docket #1 at 3). To date, it does not appear, apart from form defenses pled in the FDIC's answers, that any such federal defenses or statutory powers have been genuinely asserted. The dispositive motion deadline in these cases has passed. Unless the FDIC asserts a colorable federal defense to the dispositive motion pending in the '737 case, the Court will be constrained to stay that case and order briefing on the issue of subject-matter jurisdiction before moving forward. As for the '772 case, it will be stayed immediately for reasons explained below.

### 2.4 Motion to Dismiss

The state court action underlying the '772 case was originally filed by BMO in Milwaukee County Circuit Court in March 2017. It concerns the same insurance policies at issue in the state court proceeding that became the '737 case, filed in 2009. BMO contends that after it filed the 2009 action, Old Republic continued to deny claims and rescind coverage on more individual loans. BMO at first added those new claims to the 2009 action, but as this became burdensome, Judge Sankovitz granted leave to BMO to file a separate action to address claims that accrued after the 2009 action was filed, leaving to Old Republic the right to object. (Case No. 17-CV-737,

Docket #4-13).[2] BMO reports that its intent was to file and immediately stay the new action, except to add newly accrued claims, once answers were filed. (Case No. 17-CV-772, Docket #19 at 7–8). Removal occurred before the defendants answered, and therefore BMO never moved for a stay of the new action in state court. *Id.*

Old Republic has moved to dismiss BMO's complaint in the '772 case, arguing that BMO has violated the prohibition against claim-splitting by duplicating in its 2017 action (now the '772 case) legal claims that it asserted in the 2009 action, including claims or issues that Old Republic contends the circuit court already rejected. (Case No. 17-CV-772, Docket #15). Old Republic asserts that the '772 case involves hundreds of precisely the same individual insurance claims that are already at issue in the '737 case.

In light of the overlap between the '737 and '772 cases with regard to at least some active individual claims, the possible jurisdictional defect in this case described above, and the fact that the '737 case appears much closer to resolution, the Court finds it most prudent to deny Old Republic's motion to dismiss without prejudice and stay the '772 case. If and when the Court is satisfied that it has proper subject-matter jurisdiction over the related '737 case, the Court will lift the stay and invite briefing on the issue of jurisdiction in this case. If and when that issue is resolved, the Court will invite renewed briefing on the motion to dismiss.

---

[2]To further complicate matters, it appears this order of Judge Sankovitz resulted from an exception filed to a ruling of the special master. If that is the case, the order would be vacated for the reasons explained above.

### 2.5 Motions to Seal

Finally, the Court will grant the myriad motions to file certain pleadings and submissions under seal. (Case No. 17-CV-734, Docket #4, #16, #37, #48, #54, #60; Case No. 17-CV-737, Docket #5, #18, #33, #53, #59, #63, #68, #69, #113, #115; Case No. 17-CV-772, Docket #40, #46, #50, #55). The protective order entered by the circuit court to protect the confidentiality of borrower information remains active in this case following removal and demands the sealing of these filings. The parties are free to move the Court for a revised protective order if they believe the parameters of the circuit court's protective order are no longer appropriate or necessary.

### 3. CONCLUSION

Based on the foregoing, the Court will grant the FDIC's motion to file an abridged state court record, grant the myriad motions to seal, grant Old Republic's motions to vacate in the '734 and '737 cases, deny without prejudice Old Republic's motion to dismiss in the '772 case, and stay the '772 case. The Court will also order that the parties file, either independently or jointly if they can agree, a notice identifying all rulings of the circuit court that are vacated by this Court's resolution of the motions to vacate. The Court will allow the parties until November 1, 2018 to file that notice, leaving a window of opportunity for the parties' efforts toward resolution to come to fruition before the parties and the Court resume the substantial work necessary to move these cases forward.

Accordingly,

**IT IS ORDERED** that the FDIC's motions to file an abridged state court record (Case No. 17-CV-734, Docket #5; Case No. 17-CV-737, Docket #6) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Old Republic's motions to supplement the record (Case No. 17-CV-734, Docket #21, #51, and #69; Case No. 17-CV-737, Docket #23, #31, #62, #79; Case No. 17-CV-772, Docket #49) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Old Republic's motions to vacate (Case No. 17-CV-734, Docket #17; Case No. 17-CV-737, Docket #19) be and the same are hereby **GRANTED.** Within 30 days of the entry of this Order, each party, or all parties jointly, are directed to submit a notice identifying all orders or rulings from the circuit court that are vacated pursuant to this Order;

**IT IS FURTHER ORDERED** that Old Republic's motion to dismiss (Case No. 17-CV-772, Docket #15) be and the same is hereby **DENIED without prejudice**;

**IT IS ORDERED** that the motions to file certain pleadings under seal (Case No. 17-CV-734, Docket #4, #16, #37, #48, #54, #60; Case No. 17-CV-737, Docket #5, #18, #33, #53, #59, #63, #68, #69, #113, #115; Case No. 17-CV-772, Docket #40, #46, #50, #55) be and the same are hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Case No. 17-CV-772 be and the same is hereby **STAYED** until further order of this Court.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge